May it please the court. I'm Bennett Rolfe. I'm the attorney for the appellant Cindy Wasserman. This case comes to this court in terms of the issues raised only with respect to the Rehabilitation Act claim, the Title VI claim, and the 1983 claim. And as respects those causes of action, the issue is whether the appellant raised sufficient evidence of pretext to withstand a motion for summary judgment. Looking at the evidence, we see a pattern. I tried to break down in the briefs two distinct time periods. One prior to August the 13th of 2006, the date that the appellant was arrested. And the events subsequent thereto. And I did that for a purpose because I think all of those, the events of all of those, covering all of those periods are actionable, number one. And I think they need to be analyzed separately because the mere fact that a litigant is arrested may tend to diffuse a proper examination of the events that occurred before the arrest and those that occurred after. And the most significant thing that occurred before was that the plaintiff was demoted, essentially, from her position. She had been with the district for 20 years, a full-time permanent employee of the district. She was substituted, she was made on August the 4th of 2006 a substitute teacher, okay, with the proviso that she could only work at any one particular location for a maximum of three days. Was that unique to your client or was that the district's position in regards to all substitute teachers? That was the district's position. The three-day proviso was a proviso as to her. And that was, and the explanation for that that was given by the district was that it was for her to avoid situations where confrontations could occur. Would you agree with me, counsel, that your client had a long history of confrontations? There were confrontations. I'm not going to deny that. But the question is whether the behavior in which she engaged was so disruptive that as a matter of law, it can be concluded that it was her disruptiveness as opposed to her exercise of her privilege to advocate on behalf of disabled children, whether it was one or the other, or whether a judge can decide that issue based upon the facts, or whether a jury gets to decide that issue based upon all the facts in the record. Well, but isn't the arrangement that has been created under the law is that at some point the burden shifts to the district, and then if they demonstrate a reason, it shifts back? And that's where the burden is at this time. Seems to me you're asking us to stop at that second step and hold the district responsible without then asking, did you meet your third step of that burden? Well, first of all, your honor, no one is ever going to admit that they took action against this lady based upon the fact that she engaged in protective activity. It just doesn't happen. Okay. And that's number one. Number two, you need to look. There are cases.  There are cases in which the burden on coming forth with pretext is actually satisfied in the prima facie case. Okay. Rather, excuse me, the summer of 2003. You have the plaintiff engaged in confrontations, you could call it, but dialogue with school officials about the adequacy of provisions in summer school in terms of the availability of IEP scores, the facilities that were provided. In other words, issues concerning which she is entitled to raise questions about as a form of protective activity. I don't want to take you out of your argument, but I've got two questions I want to get in before you run out of time. First is, without your client's declaration, do you satisfy your burden in regards to pretext? If we do not consider your client's declaration? Are you talking about her original declaration or her supplemental declaration? Her supplemental declaration, late filed. I think it's satisfied without it. And I think it's satisfied without the portions of her original declaration, which was stricken by the district court. Because I think you have so much protected activity in the summer of 2006. Okay. Her participation in this IEP meeting where she was supporting a parent who had a child who needed more services and there was some confrontation or dialogue at that particular meeting. You have that event. You have then her removal from the home and hospital programs. And you have her reassignment at the request of the mother of that particular child. And then you have the summer school events. But I understand you, counsel, are you saying that in essence then that the evidence that you put forward to create the assumption of retaliation based on all of that activity, the timing and all of the other things, the burden shifted to the district. They came forward with the evidence of confrontations and the like, their justification. The burden shifts back to you to establish that that's pretext, that the evidence that rebuts pretext is the same evidence that shifted the burden to them in the first place. Not completely, but pretty close. Okay. Pretty close, Your Honor. Counsel, one other question before we run out of time here. Are you abandoning your claim that your client had an unrealistic opportunity to conduct discovery? I've not heard you mention that in argument. I think the district court abused its discretion in setting unrealistic dates and not granting the stipulation of the parties to continue the discovery cutoff and all the other dates. And where the court really abused its discretion in my mind is telling me you can go ahead and take the depositions of these individuals on the motivation for their taking action against my client, the plaintiff. But when I tried to build a case for pretext, because same things that happened to another teacher, Myrene Nogi, and she was retaliated against. Where is that in the record, Counsel? Well, I can't point to the record, but it's very, very clear. Those portions of the record are pointed to in my opening brief. Well, what you say in your brief is that it's your client's opinion there was retaliation in regards to a second teacher. No. In the original opposition to the motion for summary judgment, I attached portions of the deposition that I took of Myrene Nogi where she was claiming that. Well, in regards to the discovery cutoff, had you taken depositions of these individuals who you were ultimately allowed to depose previously during the discovery period? Are you asking me had I had the opportunity to? Yes, sir. Yeah, I had the opportunity to, but the reality of the situation is that there was heavy negotiations for settlement and mediations going on, three days of mediation. My ex-wife passed away. There was a lot of things happening all at one particular point in time, and I appreciate the fact that the district court judge allowed me to take those depositions. But she gave me with one hand and took away with the other in the process of, I don't think you can do that, I think, and that's my argument. I'm down to 30 seconds, so I'll. Well, you're over 30 seconds, but I'll give you a minute for rebuttal. Okay, thank you, Your Honor. Good morning, Your Honor. Stephen Rennick for the Appellees. This is such a facts-intensive case I'm not going to try and present it. It would help me if you would tell me why Ms. Wasserman didn't raise a genuine tribal issue of fact on the issue of pretext. She doesn't have to establish pretext at summary judgment. She just has to show there's a genuine tribal issue of fact that should be resolved by a trier of fact, most instances the jury. Essentially because her only response to the explanations given by the various school district officials as to why they took the various actions that they took is, no, the reason they took it is because they were retaliating against me. There's nothing other than her personal belief that that was their motivation. Well, she points to the actions that they took against her. But that's at the other side of the equation. First, she's got to show protected activity. Well, the district court judge here assumed protected activity. Yes.  I agree. And then she's got to show that there was an adverse employment action, which is what I believe when you talk about the actions that they took. That's the part of the equation. Then you've got to show the connection and that was the temporal issue. Then you get to the explanation. The district court, at least with respect to the rehabilitation ad claim, Title VI claim, basically went for her on those issues. Yes. And we get the pretext. Exactly. But where we got to is we never get to anything from the plaintiff on pretext. We get the explanation from the defendants, from the employees as to why they took the various actions that the court has identified as potentially adverse employment actions, gave the explanations. They're not irrational on their face. They're not internally inconsistent. They're explanations that an employer could logically give. That then shifted the burden to the plaintiff to explain why that's pretext, why there's something about that that raised a tribal issue. How about the temporal issue? As I discussed. The case law is pretty good that if there's a pretty close time, you know, if the events are fairly close in time, that's a strong inference. I have two reactions to that. One, I believe the case law, when it talks about close, I quoted a case. I'm sorry I don't recall the case right off the bat. It talks about very close in time. All of the time frames that we're talking about are several months away from the protected activity. That pretty close? I don't think that's. Several months? Do we need, you know, days? I think within a month. I don't think our case law sustains that. I don't think the case law is very. Especially for teachers when you've got three months off for the summer. Except that the activities that and some of the actions that we're talking about took place during the summer. Actions were taken by the plaintiff during the spring, during the summer. This is a full year-round action on both sides. So it's not a matter that there was. Do you contend that we're talking years? I mean, some of the events, there are some events that took place years before that have nothing to do with. No, I agree. I mean, it's pretty tightly based. So why isn't that enough? If all that is necessary is that actions be within several months of one another. Well, but our case law is pretty strong that you don't have to. You know, the burden on summary judgment is not great. True. But there's also case law that's not great. It's not, you know, we don't try cases on summary judgment. Absolutely. I agree. But. And I have a, you know, I'm concerned here that that's basically what the district court judge did. I think. What happens if we throw in Rossi's letter to the district attorney during the settlement? Didn't he write a letter saying when you settle this case, would you make a condition of the settlement of the criminal charge that she resigned? Yes, he did. I'm not. Why doesn't that weigh into the equation as to what the district was really doing was trying to get rid of her? I'm not sure that that becomes retaliation. There's no question that the trial court found that there was adverse employment action. This would presumably be an adverse employment action. I'm not sure how that proves that the purpose underlying that letter and other things was retaliatory. The fact that the district may have wanted her gone doesn't necessarily say that it was because of her. Wasn't that a fairly extraordinary step for the school to get involved in a plea bargain with the defendant? Why are they intruding into that? Because the incident that was at issue before the district attorney was an incident that occurred on the job with one of their students. They were involved. Were they invited in? Were they invited to come out? I assume not. I don't know. There's no evidence of that, is there? Isn't that a factoid that comes into this balancing as to whether or not what the school's doing here is really all in the interest of – they brought her back. They reassigned her, even with these charges outstanding. They didn't put her on leave. Well, she was on administrative leave. During the entire time before the plea bargain? I apologize. I'm not sure when she went off. She was put on administrative leave as soon as she was arrested. Well, that I know. I thought she was then reassigned as things dragged on. I think you may be right that in the fall she was reassigned. But while they were dragging on, then Rossi decides to say, and she ought to be terminated. If he was that strong about it, why was she back in the classroom? I don't think we should punish the district for giving her the benefit of the doubt and assigning her to a job that did not put children at risk. I don't think that eliminated their interest in the long-term issue of, is this person appropriate to be employed by our district? And that's the explanation for why he wrote the letter, was concern about that. There's no evidence that he wrote it because she keeps talking about getting benefits for kids, and I don't want to hear that anymore, so get rid of her. The only explanation that was evident. I doubt he would have put that in the letter. The reason we like to get her out of here is she's really a pain. But we're simply making that assumption then. We're saying that. I think what we're wrestling with, as Judge Paez has pointed out, how much are we sitting here as trial judges and how much are we supposed to simply decide whether there's a triable issue? And if there's a dispute, that goes to the jury. I agree, but there has to be something to dispute about. What we're essentially saying is, here are the explanations offered by these employees. There is not any evidence that what they said is not true. That's a credibility determination, right there. You don't judge credibility. Right, but we don't judge in credibility either. We take it at face value. No, no, no, no. You take all the, in summary judgment, you take all the facts in the light most favorable to the non-moving party. But what's the basis for, essentially, we have to... They come back. The district court said, okay, they offered a legitimate explanation about their action they were taking. Okay. And then she said, well, he doesn't come back and he doesn't argue this and he doesn't argue that. And he just hasn't met his burden. But yet, you know, you can consider all the evidence that's presented in determining whether or not the plaintiff has raised, the non-moving party has raised a genuine factual issue. I agree, but I... And it doesn't take a whole lot, and our case law is pretty good about the temporal area. I just, you know, I only want, you know, I'm just, you know, I read this and, you know, when I first looked at this, I looked at, you know, the focus was on her arrest and all of that and the incident with the young student that was involved in that. And, you know, I looked at, ah, she's got a terrible case here because when you get this to a jury, a jury's going to be not too sympathetic. But that doesn't necessarily mean that she should lose her case on a summary judgment ruling. I agree with that. We let many cases go to trial that, you know, and in the end, the plaintiff may not prevail, but that's for the jury to decide. I certainly agree, but the jury has to have something to decide on. They're not supposed to speculate, and that's where we talk about the credibility issues. You have mentioned the entirety of the evidence, but with all due respect, I don't believe there's anything in the evidence either individually or in group that can say these explanations are not credible or that there's a tribal issue of fact as to whether when various employees said this was the reason why I took this action, that should be, that could be rejected. We can't simply speculate. We can't simply say, well, he may be lying, therefore we're going to leave it to the jury to decide whether or not he's lying. That's not the standard on summary judgment as I understand it, and I don't believe that. So what does the plaintiff have to do in a deposition? You have to get the witness to testify. Oh, yes, yes, yes. No, not at all. Yes, that was in the back of my mind. This was an opportunity for her to get rid of her, and, you know. Is that what the plaintiff has to uncover? No, not at all, and I agree with Mr. Rolfe that nobody's going to admit that, but the fact that we have created a system that shifts the burden to the plaintiff. That only provides an analytical framework in which to think about the issues in the case. But what it means is. . . Because when you're in trial on a case, you don't say, oh, we're going to shift the burden here, we're going to shift the burden there. The plaintiff always has the ultimate burden of proof. I agree, but what it does. . . The structure does say there has to be evidence. And I. . . There was nothing other than this must have been retaliation that the plaintiff pointed to in the opening brief. And I tried to respond to all of that, and I still have not heard anything that says. . . We have the brief. Thank you, Your Honor. Bye. Okay, thank you. We'll give you a minute. Just briefly, the burden, if there's a shift, which I stipulate that there is a shift, is met when looking at the totality of the evidence, the proffered reasons are either unworthy of credence because they're internally inconsistent or otherwise not believable. If you look at the record, there's just action on the part of the district that meets that standard. You just don't take a woman that. . . That's your characterization of it, but where is it internally inconsistent? Well, I think it depends on what action you're talking about. I think it's internally inconsistent to take the position that the woman should be compelled to resign her employment from the district in connection with a plea bargain with the district attorney, and then prior to the dismissal of the criminal action, just take her back to work, reinstate her, and assign her to all of her regular duties, and allow her to work with children. I think there's some questions to be raised about internal inconsistency of those actions. You're dealing here with a tension between school districts, especially now with limited funds, who've got these obligations that the federal and state governments have placed on them. Okay, I think we're getting back into the main argument. Okay, all right. Thank you, Your Honor. Thank you. All right, the case argument is submitted. Thank you, Counsel. Do we have Counsel in Zook v. McChasey? Yes, Your Honor. I called about a year on the last notice that I had to make a call. It was like this hearing was starting at 9 a.m. I didn't realize it was going to change to 8.30. You were called. Your office was called. We always call. That may be the case, Your Honor, but I was here and was not notified by my office. I used to work for DOJ. There's a command center. They usually try to get in touch with their counsel, don't they? I apologize again, Your Honor. Well, there's a problem here, Counsel. I accept your apology. It's not being personally aware, but the institution of the Justice Department, all the other counsel in this room got their notices, and I can't understand why DOJ, because they send their lawyers away from main justice out to Pasadena, don't have some method of communicating our clerk's office communication. So would you look into that and find out what happened? And tell the court, would you advise the court so we can avoid that problem in the future? If it's something we need to correct, we need to be advised. So I would ask that you advise the panel where the breakdown came. Absolutely, Your Honor. I'll do that as soon as I return. All right. Thank you. All right. So we'll go to Zook v. Nkezi.
judges: Fisher, Paez, Robart